**IN RE: Lindsey Catherine HOLMES, Debtor.**

**Case No: 15–14034 (RG)**

United States Bankruptcy Court, D. New Jersey.

Signed September 19, 2017

RAYMOND AND RAYMOND, BY: Herbert B. Raymond, Esq., Kevin L. de Lyon, Esq., 7 Glenwood Avenue, 4th Floor, Suite 408, East Orange, New Jersey 07017, Attorney(s) for Debtor, Lindsey Catherine Holmes

ANSELL GRIMM & AARON, P.C., BY: James G. Aaron, Esq., Richard B. Linderman, Esq., Jay B. Feldman, Esq., 214 Carnegie Center, Suite 112, Princeton, New Jersey 08540, Attorney(s) for Community Hills Condominium Association, Inc.

Marie–Ann Greenberg, Esq., Chapter 13 Standing Trustee, Joseph D. Petrolino, Jr., Esq., Brian M. Knapp, Esq., 30 Two Bridges Road, Suite 330, Fairfield, New Jersey 07004

## OPINION

ROSEMARY GAMBARDELLA, UNITED STATES BANKRUPTCY JUDGE

### MATTER BEFORE THE COURT

This matter comes before the Court by way of a Remand Order and Opinion dated

September 16, 2016 issued by the United States District Court for the District of New Jersey (the "District Court") concerning confirmation of the Debtor's Modified Chapter 13 Plan. This Court previously entered an Order dated August 27, 2015 denying confirmation of Debtor's Modified Plan and dismissing Debtor's petition without prejudice.[1] This Court determined that Debtor's Plan could not be confirmed because it attempted to strip off a condominium lien on Debtor's principal residence in violation of 11 U.S.C. § 1322(b). Thereafter, the Debtor filed an appeal, and the District Court reversed and remanded for further proceedings. The parties have since filed their respective briefs concerning the remand, and this Court conducted a Hearing on April 3, 2017. The following constitutes this Court's findings of fact and conclusions of law.

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 and amended September 18, 2012. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), as it concerns confirmation of Debtor's Modified Chapter 13 Plan.

### FACTUAL BACKGROUND

The Debtor, Lindsey Catherine Holmes ("Debtor") owns a condominium unit located at 252 West Kinney Street, Newark, New Jersey ("Property"). The Debtor purchased the Property by Deed recorded on April 19, 2007 ("Deed"). Feldman Cert., ECF No. 112, ¶ 7. It is undisputed that the

Property is the Debtor's principal residence. *Id.* The Property is subject to mortgage lien held by Bank of America, N.A., as the successor to Countrywide Home Loans, Inc. ("Countrywide" or "Mortgagee"), in the amount of $206,525.23 according to its filed proof of claim. The estimated value of the Property is $85,000. *Holmes v. Cmty. Hills Condo. Ass'n,* No. 15-6834 (KM), —— B.R. ——, ——, 2016 WL 4950993, at *1 (D.N.J. Sept. 16, 2016). The Property is part of Community Hills Condominium Association, Inc. ("Community Hills"). Community Hills is a nonprofit corporation condominium association organized pursuant to N.J.S.A. 15A: 1–1 *et seq.* and N.J.S.A. 46:8B–1 *et seq.*, the New Jersey Condominium Act, (the "Act") and by Master Deed, ("Master Deed") and By-laws ("By–Laws") dated August 22, 2000 and recorded August 23, 2000 with the Register's Office in Essex County, New Jersey. Community Hills has filed condominium liens against the Property in the aggregate amount of $27,358.71 for unpaid condominium fees and other charges. *See* Amended Proof of Claim, No. 3–2.

Pursuant to Community Hills' governing documents, the Debtor, as a unit owner, is responsible for a proportionate share of common expense assessments, attorney's fees and costs, and administrative costs of operating the association. Feldman Cert., ¶ 8. The Deed recorded on August 19, 2007 with the Register's Office in Essex County, New Jersey, references the Master Deed. Feldman Cert., Ex. B.[2] Paragraph 7.02 of the Master Deed states in pertinent part:

7.02 Lien in Favor of the Association.

---

1. On September 1, 2015 the Court entered an order, on motion of the Debtor, staying the dismissal order pending appeal. The order required the Debtor to continue making regular monthly payments to the mortgagee the Bank of America, Community Hills Condo-

minium Association and the Chapter 13 Standing Trustee.

2. On April 21, 2017, Community Hills filed complete copies of the Master Deed and By-laws. ECF No. 122.

All charges and expenses chargeable to any Unit constitute a lien against that Unit in favor of the Association. Those liens are prior to all other liens except (a) assessments, liens and charges for taxes past due and unpaid on the Unit and (b) payments due under bona fide and duly recorded Mortgage instruments, if any, except to the extent modified by any applicable New Jersey or federal law...

Master Deed, ¶ 7.02.

Paragraph 16.03 of the Master Deed, titled "Master Deed Provisions and Exhibits to be a Covenant Running with the Land", states:

The present title to the Property herein described, the title to each Unit hereafter to be conveyed ad the acquisition of title by any person to a Unit means that the acquirer adopts, ratifies and will comply with the provision of this Master Deed, the Bylaws and Rules and Regulations and their Amendments and Supplements. The covenants, agreements, and restrictions set forth herein run with the land and bind the Developer (except as conditioned herein), all Owners and the successors and assigns of each, as their interest appear.

Master Deed, ¶ 16.03.

On August 18, 2008, Countrywide, which held a first mortgage on the Property, filed a foreclosure complaint against the Property in the Superior Court of Essex County, Chancery Division under the docket number F–31885–08 ("First Foreclosure Complaint"). Linderman Cert., ECF No. 115–1, ¶ 7. The Complaint also named Community Hills as a defendant. Id. ¶ 8. On October 27, 2008 Community Hills filed a non-contesting Answer in that action. Id. ¶ 10. The First Foreclosure Complaint was subsequently dismissed on January 26, 2012 without prejudice. Id. ¶ 9. (Supplemental Reply Cert. No. 119, ¶ 4, Ex. A). After the First Foreclosure Complaint was filed, but before it was dismissed, Community Hills recorded a first lien against the Property on December 19, 2008 in the amount of $5,822.25 for unpaid common expense assessments and other charges. ("2008 Lien"). Id. ¶ 11. Prior to recording its first lien, Community Hills sent notices to the Debtor on September 2, 2008 and October 15, 2008, first warning that failure to pay the delinquency amounts may result in the association filing a lien against the Property and then advising that the Association had directed its counsel, Stark & Stark, P.C. to prepare and file a Notice of Assessment of Lien against the Property. See Molina Cert., ECF No. 115–14, ¶¶ 4, 5. On March 20, 2009, Countrywide filed a second foreclosure complaint under docket F–14960–09 ("Second Foreclosure Complaint") against the Property. Linderman Cert. ¶ 12 (Reply Cert. at 6, ¶ 5). The Second Foreclosure Complaint also named Community Hills as a defendant. Id. The Complaint specifically referred to Community Hill's 2008 lien in the amount of $5,822.25. ¶ 13, Exh. D. The Second Foreclosure Complaint was dismissed on January 24, 2013 without prejudice. Id. ¶ 6 (Supplemental Reply Cert. ECF No. 1119, ¶ 6, Ex. B). On April 17, 2009, Community Hills recorded a lien on the Property in the amount of $4,348.00 for unpaid common expense assessments and other charges. ("2009 Lien"). Linderman Cert. ¶ 15, Exh. E. Community Hills filed an action against the Debtor in the Superior Court of New Jersey, Law Division, Special Civil Part (Docket No. DC–041534–08) seeking a money judgment for unpaid fees and charges and obtained a money judgment on October 2, 2009 in the amount of $11,899.00. Id. ¶¶ 16, 17, Ex. F. Community Hills sent multiple letters to the Debtor with respect to the Special Civil Action. Id. ¶ 17, Exh. F. On April 9, 2010, Community Hills sent the Debtor a letter advising her of the second lien re-

corded against her property. *Id.,* ¶ 19. A copy of the letter was sent to Countrywide, ¶ 19, Exh. G. On or about May 28, 2010, Community Hills' advised the Mortgagee of the payoff amount of $ 18,707.41 representing the delinquency owed to Community Hills. *See id.* ¶ 20.

Following the apparent satisfaction of the first two liens, Community Hills filed four (4) additional liens for unpaid common expense assessments and other charges, which make up its current Proof of Claim. The first lien was recorded on December 15, 2011, in the amount of $5,237.38. Feldman Cert. ¶ 11, Exh. D. Community Hills sent Debtor notice of its intent to file this lien on November 4, 2011. Linderman Cert. ¶ 21, Exh. I. On January 11, 2012 Community Hills sent Debtor Notice of Intent To Foreclose. Linderman Cert. ¶ 23, Exh. J. On March 5, 2012, Community Hills recorded a second lien in the amount of $5,186.00. Exh. E, Feldman Cert. ¶ 12. Notice that the second lien had been recorded was sent to Debtor and the Mortgagee Countrywide on March 16, 2012. Linderman Cert. ¶ 24, Exh. K. A third lien was recorded on September 25, 2013, in the amount of $7,375.28. Feldman Cert. ¶ 13, Exh. F. Notice that the third lien had been recorded was sent to Debtor and the Mortgagee Countrywide on October 7, 2013. Linderman Cert, ¶ 25, Exh. L. A fourth lien was recorded on March 21, 2014, in the amount of $9,560.05. Feldman Cert. ¶ 14, Exh. G. These four liens remain unsatisfied.

**3.** In its Motion, Community Hills noted that Debtor had two previous bankruptcy filings: (1) a chapter 7 case filed on March 24, 2014, which resulted in Debtor receiving a discharge dated June 27, 2014 (Case No. 14–15522); and (2) a chapter 13 case filed on September 15, 2014 and dismissed on March 9, 2015 (Case No. No. 14–28853). Community Hills argued that Debtor was a "serial filer" engaged in "a scheme to hinder and delay" foreclosure proceedings initiated by Commu-

## PROCEDURAL HISTORY

### *Prior Proceedings in the Bankruptcy Court*

On March 9, 2015 ("Petition Date"), the Debtor filed a petition under chapter 13 of the Bankruptcy Code. ECF No. 1. Marie–Ann Greenberg, Esq. serves as the Standing Chapter 13 Trustee. On July 20, 2015, Community Hills filed an Amended Proof of Claim in the total amount of $36,585.06 for unpaid assessments, late fees, attorney's fees and other charges, including $27,358.71 secured by its condominium liens and an unsecured claim of $9,226.35. *See* Amended Proof of Claim, No. 3–2. On March 20, 2015, Community Hills filed a Motion to Dismiss Debtor's Case, or, in the alternative, to Vacate the Automatic Stay and for Prospective Relief. ECF No. 12.[3] The Motion to Dismiss was adjourned on several occasions to provide Debtor with an opportunity to set forth a feasible chapter 13 plan. Debtor filed her first Chapter 13 Plan on March 24, 2015. ECF No. 16. A second plan was filed on May 21, 2015. ECF 38. Lastly, on July 24, 2015, Debtor filed a Third Modified Chapter 13 Plan (the "Plan"). ECF No. 53.[4] Each of Debtors' respective Plans attempted, in one way or another, to partially avoid Community Hills' liens on the Property and to modify and reclassify Community Hills' claim from a secured claim to a partially secured claim and an unsecured claim. The current Modified Plan proposes to pay Community Hills $1,839.00 as a

nity Hills with respect to the Property and a Sheriff's sale scheduled for March 10, 2015. Patterson Cert., ECF No. 12, ¶¶ 9–20. Community Hills also argued that Debtor could not set forth a feasible plan of reorganization. *Id.*

**4.** Debtor had filed two previous chapter 13 plans filed on March 24, 2015 and May 21, 2015. *See* ECF Nos. 16, 38.

secured claim representing a "six months superpriority claim" as required under New Jersey Statutes "if appropriate steps are taken to claim lien" with the balance of the claim treated as an unsecured claim. *See* Plan at Part 4(e). Community Hills filed an objection arguing that its claim cannot be modified pursuant to the Anti–Modification Clause, 11 U.S.C. § 1322(b)(2). *See* Community Hills' Objection, ECF No. 22.

On August 18, 2015, this Court held a Confirmation Hearing on Debtor's Third Modified Chapter 13 Plan and Community Hills' Motion to Dismiss and for Stay Relief. At the Hearing, this Court ruled that Community Hills' claim could not be modified. Specifically, this Court relied upon a decision by the Hon. Raymond T. Lyon in *In re Robinson*, No. 11-26981, 2012 WL 761251, at *5 (Bankr. D.N.J. 2012) for the proposition that 11 U.S.C. § 1322(b) prevents modification of condominium liens secured by a debtor's principal residence. The Court also determined that dismissal of Debtor's petition was appropriate because the Plan lacked feasibility in the manner that it attempted to treat Community Hills' secured claim. Accordingly, on August 27, 2015, the Court entered an Order denying Confirmation of the Debtor's Modified Plan and·dismissed the Debtor's Chapter 13 Petition without prejudice. Dismissal Order, ECF No. 69.

On August 22, 2015, the Debtor filed a Motion for a Stay Pending Appeal of this Court's Dismissal Order. ECF No. 60. This Court held a Hearing on August 27, 2015, at which time the Court placed its decision on the record. *See* Aug. 27, 2015 Hearing Transcript, ECF No. 81. The Court again relied upon Judge Lyon's decision in *Robinson* for the proposition that Community Hills' claim could not be modified pursuant to Section 1322(b). *Id.* at

19:19–25, 20:1–3. However, the Court also acknowledged that a decision by the Hon. Christine M. Gravelle in *In re Rones*, 531 B.R. 526 (Bankr. D.N.J. 2015)[5] created a split of authority on the modification issue. *Id.* at 20:4–17. Ultimately, the Court granted the stay pending appeal and an Order was entered to the effect on September 1, 2015. ECF No. 68. On September 13, 2015, Debtor filed a Notice of Appeal to the United States District Court for the District of New Jersey. ECF No. 72.

### The District Court's Opinion

On September 16, 2016, the Hon. Kevin McNulty, U.S.D.J., entered a written Opinion and Order reversing this Court's Dismissal Order and remanding the matter for further proceedings consistent with the District Court's Opinion. *Holmes v. Cmty. Hills Condo. Ass'n*, No. 15-6834 (KM), —— B.R. ——, 2016 WL 4950993 (D.N.J. Sept. 16, 2016). The District Court framed the issue on appeal as "whether a condominium association's lien is a security interest in the debtor's principal residence, and hence subject to the 'anti-modification' clause, 11 U.S.C. § 1322(b)(2)." *Id.* at ——, 2016 WL 4950993 at *1. The Court began its analysis noting that § 1322(b)(2) places a limitation on the modification of secured claims secured only by a security interest in a debtor's principal residence. *Id.* at ——–——, 2016 WL 4950993 at *1–2 (citing *Nobelman v. Am. Savings Bank*, 508 U.S. 324, 331–32, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)). The Court recognized an exception to that rule, noting that "if the relevant lien, even one on a principal residence, is junior to a lien that exceeds the value of the residence collateral, it is treated as unsecured. Being wholly unsecured, it is of course not secured by a principal residence, and therefore does not fall under § 1322(b)(2)." *Id.* at ——, 2016

---

**5.** The *Rones* bankruptcy court decision was subsequently reversed in part on February 17,

2016. *See In re Rones*, 551 B.R. 162 (D.N.J. 2016).

WL 4950993 at *2 (citing *In re McDonald,* 205 F.3d 606, 613–14 (3d Cir. 2000); *In re Rones,* 551 B.R. 162, 168 (D.N.J. 2016)). The Court further noted that under the New Jersey Condominium Act, a condominium association's lien is granted priority to the extent of six months' worth of assessments. *Id.* at ———————, 2016 WL 4950993 at *2–3 (citing N.J.S.A. 46:8B–21). Next, the Court cited to the District Court's decision in *Rones,* which held that "because a portion of the Lien was secured by a security interest in the debtor's principal residence, no portion of the Association's lien could be stripped off under Section 1322." *Id.* at ———, 2016 WL 4950993 at *4 (quoting *Rones,* 551 B.R. at 171). The Court noted, however, that *Rones* did not face the "definition issue" under the Bankruptcy Code of whether the lien was a statutory lien under 11 U.S.C. § 101(53) or security interest under 11 U.S.C. § 101(51), because it "accepted the conclusion of the bankruptcy court that the lien was created by agreement." *Id.* (citing *Rones,* 551 B.R. at 171). Thus, the District Court suggested that if the lien is construed as a "statutory lien," that is a lien that arises "solely by force of statute", then § 1322(b)(2) would not apply and the lien could be avoided under the Plan. The Court further noted that whether the association's lien is a "security interest" or a "statutory lien" depends upon the facts of the case including facts about the creation or perfection of any contractual lien, notice to the unit holder under the State Condominium Act, recordation, or other pertinent facts." *Id.* at ———, 2016 WL 4950993 at *5.

Ultimately, the Court remanded the matter to this Court and directed the parties to "present the matter to the bankruptcy judge in a manner that permits the judge to make factual findings as to the existence, priority, and recordation of (a) any security interests; (b) any statutory lien; (c) the priority of such; and (d) relat-

edly, whether any such lien is secured by equity in the property." *Id.* at ———, 2016 WL 4950993 at *5.

### Community Hills' Brief on Remand

On January 20, 2017, Community Hills filed its Brief on Remand in Further Support of Objection to Confirmation of Debtor's Chapter 13 Plan and in Opposition to Debtor's Motion to Avoid and Reclassify Lien of Community Hills Condominium Association, Inc., *In re Holmes,* No. 15–14034, ECF No. 112.

Community Hills argues that Section 1322(b)(2) prohibits a chapter 13 plan from bifurcating a security interest in the debtor's principal residence into secured and unsecured portions. *Id.* at 3 (citing *Nobelman,* 508 U.S. at 332, 113 S.Ct. 2106; *In re Robinson,* No. 11-26981, 2012 WL 761251, at *5). Thus, Section 1322(b)(2) creates a limited exception to Section 506(a)(1) of the Bankruptcy Code for chapter 13 cases involving security interests secured by a debtor's primary residence. *Id.* at 4 (citing *In re Rones,* 551 B.R. at 167–68). Community Hills argues that its liens are a security interest in Debtors' principal residence and that they are partially secured pursuant to N.J.S.A. 46:8B–21. *Id.* at 2, 4. Community Hills notes that 11 U.S.C. § 101(51) defines the term "security interest" as a "lien created by agreement." *Id.* at 3. Community Hills urges that "the legislative history of the Bankruptcy Reform Act clearly indicates that the terms 'judicial lien,' 'security interest,' and 'statutory lien' are to be mutually exclusive." *Id.* at 3–4 (quoting *In re Griggs,* 12 B.R. 443, 444 (Bankr. E.D. Pa. 1981)). Community Hills contends that the lien of a condominium association remains consensual by virtue of the debtor entering into an agreement for a condominium unit and the character of the lien does not substantially change, even after entry of final judgment. *Id.* (citing *In re Beckley,*

210 B.R. 391, 393 (Bankr. M.D. Fla. 1997); *In re Bland,* 91 B.R. 421, 422–23 (Bankr. N.D. Ohio 1988)).

Community Hills argues that to determine property rights and interests one must look to state law. *Id.* at 4 (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Community Hills notes that the New Jersey Condominium Act provides "a limited super-priority to liens recorded by condominium associations for unpaid assessments." *Id.* at 5 (citing *In re Rones,* 551 B.R. at 169). However, the lien itself is "created by the master deed and it is not created by the New Jersey Condominium Act." *Id.* at 5 (citing *In re Rones,* 551 B.R. at 168). Community Hills states that the Act "merely altered the priority of a portion of the lien," and therefore the Act "does not serve as the source of collateral which would remove the Lien from the protection of the Anti–Modification Clause [in Section 1322(b)(2) of the Bankruptcy Code.]" *Id.* at 5 (citing *Rones,* 551 B.R. at 171.) Community Hills urges this Court to follow *Rones* and find that the lien is a "security interest" because it was created by the master deed, by-laws, and deed to the condominium unit, and is therefore independent of the Act. *Id.* at 6. Community Hills states that whether or not the Act provides a limited 6–month priority to the lien is a "separate issue and is not relevant as to the threshold issue of whether the Association has a consensual lien/security interest." *Id.* at 6. Accordingly, Community Hills concludes that under the plain language of Section 1322(b)(2), its lien cannot be bifurcated or partially stripped off and its claim cannot be modified but its entire claim must be paid through the Debtor's plan. *Id.* at 6–7.

### Debtor's Brief on Remand

On February 20, 2017, the Debtor filed its Brief on Remand in Support of Confirmation of Debtor's Chapter 13 Plan and Debtor's Motion to Reclassify Lien of Community Hills Condominium Association, Inc., *In re Holmes,* No. 15–14034, ECF No. 113.

First, Debtor argues that Community Hills is not entitled to priority because it has failed to meet various requirements under the Condominium Act. *Id.* at 1–2. Debtor argues that pursuant to N.J.S.A. 46:8B–21(a), Community Hills must show that the liens recorded for missed assessments were "upon proper notice to the appropriate unit holder." *Id.* at 2. Debtor contends that Community Hills' liens were improperly recorded because Debtor was not provided the requisite notice. *Id.* Debtor admits that while she was delinquent on her assessment payments, Community Hills provided no evidence that Debtor was notified of the same as required by the Act. *Id.* Next, Debtor contends that in order to achieve priority, Community Hills' liens must have been recorded prior to a foreclosure complaint being filed by the mortgage holder. *Id.* at 3 (citing N.J.S.A. 46:8B–21(b)(2)). Debtor contends that the Mortgagee Countrywide had initiated two (2) separate foreclosure proceedings in 2008 and 2009 and that Community Hills did not record its first lien until 2011. *Id.* Debtor argues that by failing to attain priority status, Community Hills' lien is wholly unsecured and subject to modification under the Debtor's Plan. *Id.* Debtor also argues that Community Hills did not satisfy subsection N.J.S.A. 46:8B–21(b)(6) because it failed to provide evidence that it notified the Mortgagee in writing of the various lien filings. *Id.* at 3–4.

Second, the Debtor contends that even if Community Hills met the priority requirements, its lien is still subject to modification because it is a statutory lien and not a consensual lien. *Id.* at 4. The Debtor contends that Community Hills admitted its lien was statutory in Debtor's prior chap-

ter 13 case. *Id.* at 54 (citing Case No. 14–28853, ECF No. 39, ¶ 3) ("... the Condominium duly filed and recorded notices of assessment liens ... ['Statutory Liens']."). Next, Debtor contends that a condominium lien is a statutory lien as defined by Section 101(53) of the Bankruptcy Code. *Id.* Debtor notes that the definitions of judicial liens, statutory liens, and consensual liens are "mutually exclusive." *Id.* Debtor asserts that "[b]ecause condominium liens are a creation of statute, N.J.S.A. 46:8B–21, they cannot be common law liens." *Id.* at 5. The issue then is whether it is a security interest, statutory lien, or judicial lien. Debtor relies upon *In re Young*, 477 B.R. 594 (W.D. Pa. 2012), which held that a condominium lien arising under a Pennsylvania statute was a statutory lien and not a security interest. *Id.* at 4–5. Debtor argued that in *Young*, the court found that since the Pennsylvania statute automatically created a lien, the fact that the master deed and bylaws also created a lien did not change its status as a statutory lien because the focus is on how the lien first arose. *Id.* at 5 (citing *Young*, 477 B.R. at 600–601, 603; *In re Johnson*, 108 B.R. 81, 82 (Bankr. W.D. Pa. 1989); *In re Stern*, 44 B.R. 15, 18 (Bankr. Mass. 1984); *In re Nentwick*, 79 B.R. 145, 146 (N.D. N.Y. 1987)).

Debtor argues that similar to the statute in *Young*, the New Jersey Condominium Act provides for automatic liens for unpaid assessments. *Id.* at 5 (citing N.J.S.A. 46:8B–21(a)). Debtor argues that since the Act provides for automatic liens for unpaid assessments, Community Hills' lien first arose by statute, notwithstanding a similar provision in the Master Deed or By-Laws. *Id.* at 5. Debtor contends that if the Master Deed was somehow found to be materially defective, the Act provides a "fallback that predates the deed and guarantees the lien." *Id.* The Debtor argues that the Act creates the lien and the Master Deed merely serves as the formal mechanism to advise the Debtor of this statutory lien as a condition of their home ownership. *Id.* at 6. Debtor further contends that it is questionable if a lien is even created at the time the Master Deed originates. *Id.* at 6 (citing *Holmes*, —— B.R. at ——, 2016 WL 4950993, at *5) ("A consensual lien arises from the purchase of the unit, but depends on other facts, such as the content of the master deed and presumably the existence of an arrearage")). Debtor asserts that the necessary element of a lien is that there is a debt which secures the lien and that there can be no debt when the Master Deed originated because there is not yet a default under the terms of the agreement. *Id.* Therefore, the Master Deed does not create a consensual lien. *Id.*

Next, Debtor argues that even if Community Hills has a security interest, the Master Deed alone cannot serve as the basis for priority status. *Id.* at 6. Debtor notes that there is nothing in the Master Deed itself that creates priority; rather, the Act would be the basis for priority status, and hence compliance with the statute is the only means by which priority is attained. *Id.* Debtor further argues that the *Rones* District Court decision serves no useful guidance in determining the fundamental issue of whether the lien is a security interest or statutory lien. *Id.* at 7. Debtor notes that the District Court in *Holmes* acknowledged that *Rones* did not address the "definitional issue," nor did address any of the factual aspects relating to compliance with the Act, but accepted the conclusion of the bankruptcy court that the lien was created by agreement. *Id.*

Lastly, Debtor argues that even if its previous arguments fail, Community Hills' lien is subject to modification pursuant to 11 U.S.C. § 1322(c)(2). *Id.* at 7. Debtor states that Section 1322(c) is an exception to Section 1322(b)(2) and that it allows the Debtor to modify and bifurcate the lien

into a secured six month priority portion and an unsecured portion. *Id.* Debtor argues that because a condominium lien only arises due to a delinquency, a pre-petition condominium lien is by definition a lien in which the last payment on the original payment schedule is due before the final date of the plan, an exception to the anti-modification provisions of § 1322(b)(2). *Id.* at 7–8.

### Debtor's Supplemental Brief

On March 3, 2017, the Debtor filed a Supplemental Brief on Remand in Support of Confirmation of Debtor's Chapter 13 Plan and Debtor's Motion to Reclassify Lien of Community Hills Condominium Association, Inc., *In re Holmes*, No. 15–14034, ECF No. 114.

Debtor argues that this Court should consider *In re Keise*, 564 B.R. 255, 264 (Bankr. D.N.J. 2017), a recent opinion by the Hon. Michael B. Kaplan which held that two liens of a homeowners association existed simultaneously, one pursuant to the Declaration of Covenants and Restrictions and the other a statutory lien under the Condominium Act, and that "[e]ach of the liens acts independently and is enforceable in order to allow the Association to satisfy its claim", and thus permitted modification of an association's lien. *Id.* at 1. Debtor contends that *Keise* contains analogous facts and supports Debtor's position here. *Id.* Debtor notes that Judge Kaplan cited the District Court's decision in this Case and the statement by Judge McNulty that "those dueling claims of exclusivity seem to reinforce the notion that the contractual and statutory liens, assuming both are present, must be considered separately", *Holmes*, —— B.R. at ——, 2016 WL 4950993, at *4, and concluded that "the [Holmes] district court perceived the possibility of multiple liens operating simultaneously." *Id.* at 2. Debtor further notes that *Keise* held that given the claim is supported by two liens, the homeowners association's claim in that case could be modified and bifurcated and was not protected by the anti-modification provisions of § 1322(b). *Id.*

### Community Hills' Reply

On March 5, 2017, Community Hills filed a Reply Brief in Further Support of Objection to Confirmation of Debtor's Chapter 13 Plan and in Opposition to Debtor's Motion to Avoid and Reclassify Lien of Community Hills Condominium Association, Inc., *In re Catherine Holmes*, No. 15–14034, ECF No. 115.

First, Community Hills argues that, contrary to Debtor's initial argument in her Remand Brief, Community Hills' liens are entitled to priority status and are secured liens under the New Jersey Condominium Act. *Id.* at 2. Community Hills argues: (1) the Debtor was repeatedly notified of the liens in writing prior to and after their recordation, (2) Community Hills' 2008 lien was filed before the Mortgagee Countrywide filed its Second Foreclosure Complaint on March 20, 2009, and (3) the Mortgagee had notice of the 2008 lien and listed its book and page numbers in its foreclosure complaint. *Id.* at 2. Accordingly, Community Hills asserts that its liens attained priority status under the Act. Community Hills further argues that this Court should decline to consider the factual statements in Debtor's Remand Brief because they are unsworn, improper, and do not comport with the requirements of 28 U.S.C. § 1746. *Id.* at 2 (citing *Pagan v. Holder*, 741 F.Supp.2d 687, 694 n. 11 (D.N.J. 2010), *aff'd* 430 Fed.Appx. 170 (3d Cir. 2011); *U.S. v. Branella*, 972 F.Supp. 294, 299–300 (D.N.J. 1997)).

Second, Community Hills argues that its lien is not subject to modification under § 1322(c)(2) because the words "original payment schedule" in that section "include only mortgages that mature prior to the last payment under the plan ... Thus only

short term mortgages, mortgages with balloon payments maturing before the date on which the last payment under the plan is due and long term mortgages maturing prior to the date on which the last payment under the plan is due are within the scope of § 1322(c)(2)." *Id.* at 2 (citing *In re Rowe,* 239 B.R. 44, 51 (Bankr. D.N.J. 1999)). Community Hills also cites to *In re Bartolome,* No. 07-10731-DHW, 2007 WL 2774467, at *1 (Bankr. M.D. Ala. Sept. 21, 20017), which noted that the exception under Section 1322(c)(2) applies to loans or other payments obligations "maturing within the plan term". Community Hills further argues that federal courts have determine that Section 1322(c)(2) is inapplicable to condominium liens because there is no "payment schedule." *Id.* at 2–3 (citing *In re Perry,* 235 B.R. 603, 608–609 (S.D. Tex. 1999), *abrogated on other grounds by In re Bartee,* 212 F.3d 277 (5th Cir. 2000)). Community Hills notes that by contrast, the Debtor has cited no authority that Section 1322(c)(2) can apply to condominium liens.

Third, Community Hills argues that the decision in *In re Keise* dealt with a homeowners association, and is not binding on this Court. *Id.* at 3. Community Hills further argues that *Keise* was wrongly decided because it creates a legal fiction—that one association lien is "two separate liens." *Id.* Community Hills suggests that this finding is in conflict with the principle that the categories of liens under Section 101 of the Code, judicial, statutory, and consensual, are "mutually exclusive." *Id.* Community Hills argues that under the definitions in Sections 101(51) and 101 (53) of the Code and applicable case law Community Hills' lien cannot be both a statutory lien and a security interest. *Id.* (citing *Holmes,* —— B.R. at ——, 2016 WL 4950993, at *4 (observing that "[t]he categories [judicial, statutory, and consensual] are mutually exclusive.")). Community Hills also urges that *Keise* violates the "one dollar rule"

that is "even if one dollar of a creditor's claim is secured by a security interest in a debtor's principal residence, then the entire claim—both secured and unsecured portions—cannot be modified under Section 1322." *Id.* at 4 (citing *Rones,* 551 B.R. at 168; *In re McDonald,* 205 F.3d at 613–614). For these reasons, Community Hills requests that this Court deny confirmation of the Debtor's plan and deny Debtor's Motion to Avoid/Reclassify the Association's Lien because it bifurcates the association's one lien into two separate liens. *Id.* at 5 (citing *In re McDonald,* 205 F.3d at 613–14; *In re Rones,* 551 B.R. at 168).

*Debtor's Response*

On March 29, 2017, the Debtor filed a Brief on Remand in Support of Confirmation of Debtor's Chapter 13 Plan and Debtor's Motion to Reclassify Lien of Community Hills Condominium Association, Inc., in Response to the Association's March 5th Brief, *In re Catherine Holmes,* No. 15–14034, ECF No. 117.

First, Debtor reasserts its argument that Community Hills has failed to achieve priority status under the Condominium Act. *Id.* at 1. Debtor repeats her contention that N.J.S.A. 46:8B–21(b)(2) provides that no priority status is afforded any lien recorded after a foreclosure complaint is filed by the mortgagee. *Id.* Thus, Debtor contends that under the plain language of the Act, because the Mortgagee filed foreclosure complaints in August 2008 and March 2009 prior to the Community Hills recording its liens, no priority was afforded those subsequent liens. *Id.* Debtor notes that although Community Hills provided evidence that its first lien was recorded in December 2008, prior to the 2009 foreclosure, the December 2008 lien was still filed after the First 2008 Foreclosure Complaint. *Id.* at 1–2. Debtor asserts that it is irrelevant whether or not any subsequent condominium liens are filed before

any subsequent foreclosure complaints because once Countrywide filed its initial foreclosure complaint, it was impossible for priority status to attach to any subsequent liens by Community Hills. *Id.* at 2. Next, Debtor argues that even if the dismissal of the original foreclosure complaint allowed Community Hills to obtain priority by virtue of its 2008 lien, Community Hills was still wholly unsecured at the time the bankruptcy case was filed. *Id.* Debtor notes that section N.J.S.A. 46:8B–21(b)(4) of the Act provides that the priority of a lien expires 60 months after the lien is recorded. *Id.* Debtor contends that the 2008 lien lost priority in December 2013, prior to the filing of the Debtor's instant bankruptcy case. *Id.* Debtor therefore concludes that even if its other arguments fail, because Community Hills failed to achieve priority status, the lien would be wholly unsecured and subject to strip off and modification. *Id.* The Debtor also takes issue with Community Hills' objection to Debtor's "unsworn" statements, asserting that the arguments made herein by the Debtor are strictly based on the plain language of the Act. *Id.* at 3.

Second, Debtor reasserts its alternative argument that Community Hills' lien can be modified pursuant to Section 1322(c)(2). *Id.* at 3. Debtor argues that the cases cited by Community Hills are incorrect because they attempt to limit Section 1322(c)'s application to traditional loans or mortgages, but that such limitation is unsupported by the plain meaning of Section 1322(c), which "allows modification of a claim if the last payment on the original payment schedule for the claim is due before the final payment under the plan is due." *Id.* The Debtor contends here that the actual claim, the pre-petition lien, represents a "defined payment schedule." *Id.* Debtor states that the claim "strictly includes payments due as of the date of the petition, March 9, 2015. So there is indeed a defined payment schedule for the claim, even if not for the

obligation as a whole." *Id.* Debtor asserts that the use of the word "schedule" is not limited to a traditional lending situation such as a mortgage. The Debtor notes that section 1322(c)(2) has been allowed in the analogous context of reverse mortgages where there is also no traditional payment schedule. *Id.* at 4 (citing *In re Boudereaux,* Case No. 09–12724, 2010 WL 724355 (Bankr. E.D. La. 2012)). In support, Debtor also cites to a brief submitted by Dean G. Sutton, Esq. in the case *In re Catherine Smiley,* 16–12375 (Bankr. D. N.J. October 19, 2016) (Meisel, J.) (citing *In re Gray,* 530 B.R. 501 (Bankr. S.D. Fla. 2015); *In re Brown,* 428 B.R. 672 (Bankr. D.S.C. 2010)). The Debtor contends that because only a limited number of a cases have considered Section 1322(c) in the context of association liens, this Court should address the issue in the first instance. *Id.* The Debtor contends that the plain language of Section 1322(c)(2) should control, and not the legislative history, which Debtor asserts is at best unclear. *Id.* at 5. The Debtor asserts that the legislative history also supports the position that Section 1322(c) should be extended to other liens. *Id.* The Debtor contends that the House Report states that Section 1322(c)(2) was designed to overrule the effects of the two Third Circuit Cases, *Matter of Roach,* 824 F.2d 1370 (3d Cir. 1987) and *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir. 1991), which stood for the proposition that a default on a security interest could not be cured over the life of a chapter 13 plan post-foreclosure judgment as the lender was otherwise entitled to immediate payment. *Id.* (citing *In re Witt,* 113 F.3d 508, 512 (4th Cir. 1997)). Debtor notes that Community Hills obtained a foreclosure judgment against the Debtor in this case; therefore, allowing her to save her home post-foreclosure judgment is the type of situation anticipated by Congress in enacting Section 1322(c)(2). *Id.* Debtor states

that "[a]t best the legislative history is unclear", and that this Court should decide the issue based upon a "plain language interpretation." *Id.* Debtor also argues that public policy considerations support application of Section 1322(c) to condominium liens. *Id.* Debtor notes that if she is prohibited from stripping off the condominium liens, then she would have to pay 100% of the unsecured debt owed to Community Hills in order to effectuate her fresh start, which is "clearly contrary to the purpose of the Bankruptcy Code." *Id.* at 5–6 (citing *In re Young*, 199 B.R. 643, 653 (Bankr. E.D. Tenn. 1996)).

Lastly, Debtor argues that if its other arguments are rejected, this Court should follow Judge Kaplan's decision in *Keise* and find that there are two liens securing the property, one statutory and one consensual and thus the lien is subject to modification under Section 1322(b)(2). *Id.* at 6. The Debtor notes that even though *Keise* involved a homeowners association as opposed to a condominium association, that distinction is "meaningless" because the court assumed that the homeowners association was subject to the New Jersey Condominium Act. *Id.* The Debtor also highlights the fact that Judge Kaplan referred to the District Court's decision in this Case several times throughout the decision and used it as a basis for the Court's holding. *Id.* at 6. Additionally, Debtor argues that *Keise* correctly determined that two liens may exist simultaneously. *Id.* at 7. Debtor notes that Judge Kaplan found that N.J.S.A. 46:8B–21(f) contemplates a scenario in which multiple liens may exist simultaneously and that this observation is supported by recent

New Jersey case law including, as noted by Judge Kaplan, a recent New Jersey Appellate Court decision permitting a homeowners association to levy on a judicial lien, even though the association was entitled to a statutory lien securing the same claim. *Id.* (citing *Hickory Hill at Totowa Homeowner's Ass'n. Inc. v. Ortiz*, No. A-0894-15T2, 2017 WL 393582 (N.J. Super. Ct., App. Div., January 30, 2017); *Keise*, 564 B.R. at 265). Finally, the Debtor argues that Judge Kaplan's decision comports with the fresh start policy of the Bankruptcy Code and further that Section 1322(b)(2) was never designed to protect condominium associations, but intended to cover mortgages and to protect home mortgage lenders in order to encourage the flow of money into the housing market. *Id.* (citing *In re Hussman*, 133 B.R. 490, 493 (Bankr. D. Minn. 1991)).

**Hearing**

This Court held oral argument on April 3, 2017.

*Community Hills' Argument*

Community Hills began its argument asserting that this Court should follow the *Rones* decision and *In re Lawson*, Case No. 15-13446 (Bankr. D.N.J. Dec. 17, 2015) (Papalia, J.) [6], and reject Judge Kaplan's recent decision in *Keise*. Community Hills argued that the Deed to the Property, Master Deed and Bylaws all create a security interest. Community Hills argued that its position is supported by sections 7.01 and 7.02, and 16.03 of the Master Deed, and section 13.00 of the Bylaws. Community Hills noted that the Deed signed by the Debtor expressly incorpo-

---

**6.** In *Lawson*, the Hon. Vincent F. Papalia issued a bench opinion, in which he found that under the New Jersey Condominium Act a condominium association held a "single lien on the property, a portion of which is afforded priority over the mortgage, i.e., the six months." Tr. Of December 17, 2015, 24:3–7.

Judge Papalia further held that the lien was a security interest supported by the association's bylaws and by state law, rather than a statutory or judicial lien and therefore subject to the anti-modification clause of § 1322(b)(2), because the lien did not arise "solely by statute." Tr. 27:1–3.

rates the Master Deed and the Bylaws. Next, Community Hills argued that a lien can only be one of three different types of liens defined by Section 101 of the Bankruptcy Code. Community Hills further argued that the New Jersey Condominium Act does not create the lien; but rather gives priority to a lien that was already created by the parties' agreement. Community Hills noted that under the Act an association cannot have a lien unless there is a Master Deed and By–Laws, citing N.J.S.A. 46:8B–8, –9. Community Hills argued that the Act cannot grant a right not permitted under the Master Deed. Community Hills further disagreed with the *Keise* Court's determination that the Act creates a lien regardless of whether the Master Deed includes any language giving rise to a lien. Community Hills asserts that the Act expressly requires a recorded master deed in order for an association to operate as a condominium association, citing N.J.S.A. 46:8B–8, and that the Act does not get to "shoehorn in anything that the Master Deed does not provide."

Next, Community Hills confirmed that the 2008 and 2009 liens have been satisfied by the Debtor, but that the 2011, 2012, 2013, and 2014 liens remain outstanding. Community Hills also confirmed that the Mortgagee filed foreclosure actions in 2008 and 2009 and that these cases were later dismissed. Community Hills noted that the dismissal of the Second Foreclosure Complaint occurred prior to the filing of the 2013 and 2014 liens. Community Hills argued that once a foreclosure case is dismissed it cannot have an effect on the priority status of the condominium liens where, as here, there is no active foreclosure where the foreclosure actions were dismissed. Community Hills noted that it provided evidence which proves that Debtor and the Mortgagee received all of the required notices under the New Jersey Condominium Act, Master Deed and By-Laws and that Debtor has produced no evidence to the contrary.

Next, Community Hills argued that its lien first arose by consensual agreement when the Debtor purchased the Property and agreed to the provisions in Master Deed and Bylaws. Community Hills asserts that *Keise* erred in holding that two separate liens were created for the same claim. According to Community Hills, the Act merely creates the 6–month priority which brings the lien into the purview of the anti-modification clause of § 1322(b) that requires the payment of Community Hill's claims in full; thus, its claim of more than $26,000.00 here must be paid through the Chapter 13 plan. Community Hills further argued that public policy supports its position because the Act prevents delinquent unit owners from skirting their responsibilities to contribute to the association by filing a chapter 13 petition.

Lastly, Community Hills argued that this Court should not consider Debtor's argument with respect to Section 1322(c) because that issue was not on appeal and is not part of the District Court's charge in the Remand Opinion. However, Community Hills asserted that to the extent that the Court considers the issue, § 1322(c) is not applicable to condominium liens but short-term mortgages. In response, Debtor acknowledged that the issue was not before the District Court, but stated that this Court should decide it as a matter of judicial economy. Debtor stated that if the Court does not decide the issue then the Debtor would file another modified plan and that this would invite further litigation and needless delay.

*Debtor's Argument*

Debtor's initial argument was that Community Hills lien is a statutory lien under the Act, and not a consensual lien. Debtor stated that the lien is created solely by force of the Act, and that the Act is what

gives the lien its priority. Alternatively, Debtor argued that under *Keise*, because there are two liens, even if the statutory lien achieved priority, the non-priority portion of the lien can be stripped off and is not subject to the anti-modification provisions of Section 1322(b). Debtor argued that 46:813–21 (a) of the Act unequivocally provides for the creation of a lien. Thus, even if the Court finds that there is a security interest, this Court should follow Judge Kaplan's decision in *Keise*, which found two liens securing the same claim. Debtor further argued that the *Rones* district court decision does not support Community Hills' position because the court merely accepted the conclusion reached by the bankruptcy court that the lien was a consensual lien and not a statutory lien.

Next, Debtor argued that the Court must conclude that Community Hills did not meet the statutory requirements of the Act to achieve priority for its liens. Debtor argued that under the plain language Act, the very filing of the foreclosure actions prevents any subsequently filed liens from achieving priority until the mortgage is paid off so that the claim of Community Hills is wholly unsecured. Debtor stated that the reason for the provision is to encourage condominium associations not to sleep on their rights when a unit holder fails to pay their assessments. Debtor urged this Court not to re-write the Act or second-guess the intent of the New Jersey Legislature. With respect to the notice requirements of the Act, Debtor stated that it has no additional information to add to contest Community Hills' argument that requisite notice under the Act was provided. Alternatively the Debtor urged that Community Hills' claim can be modified under § 1322(c).

At the conclusion of the Hearing, the Court permitted the parties to file supplemental submissions with respect to the priority issue. The Court also directed Community Hills to file a complete record of the Master Deed, Bylaws, and any other relevant documents not previously submitted. Community Hills filed the appropriate documents on April 21, 2017. *See* ECF No. 121.

### Community Hills' Supplemental Letter

On May 4, 2017, Community Hills filed its Supplemental Letter. ECF No. 123.

First, Community Hills stated that Debtor's argument that N.J.S.A. 46:8B–21(b)(2) cuts off Community Hills' ability to achieve priority under the statute does not comport with the New Jersey Lis Pendens Statute, N.J.S.A. 2A:15–6 *et seq.*, and relevant case law. *Id.* at 1. Community Hills asserted that the filing of a *lis pendens* "serves as constructive notice" to the world of "pending" litigation involving a property so that any subsequent purchaser or lienor of the property would take "subject to the outcome" of the lawsuit. *Id.* at 2 (citing *Manzo v. Shawmut Bank, N.A.*, 291 N.J.Super. 194, 199, 677 A.2d 224 (App. Div. 1996); *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1329 (3d Cir. 1982)). According to Community Hills, once a foreclosure action has been dismissed it is no longer "pending litigation" and therefore, the *lis pendens* has no effect. In addition, Community Hills notes that a *lis pendens* expires five years from the date of filing. *Id.* (citing N.J.S.A. 2A:15–11). If a foreclosure action is abandoned, terminated or dismissed, the *lis pendens* has no effect and the foreclosing party is charged with taking action to file a warrant discharging the *lis pendens*. *Id.* (N.J.S.A. 2A:15–17). Therefore, because the 2008 and 2009 mortgage foreclosures were dismissed prior to two of the liens being recorded, the related *lis pendens* recorded on August 29, 2008 and May 9, 2009, respectively, have no legal effect. *Id.* Community Hills argues here that here the mortgage holder improperly filed two fore-

closure actions on the same note and mortgage against the Debtor's home, and failed to discharge the two *lis pendens*. Community Hills asserts that the failure to discharge the warrants has no legal impact on the Association's liens because the underlying foreclosures were dismissed and Debtor's argument that once the mortgage holder's *lis pendens* were recorded, their effect served to bar any priority granted by the Act runs counter to the *lis pendens* statute.

Second, Community Hills argues that *Chase Manhattan Mortg. v. Spina,* 325 N.J.Super. 42, 737 A.2d 704 (App Div. 1998) supports the argument that the Association's liens here are consensual and not statutory. Community Hills contends that *Chase* makes clear that condominium associations in New Jersey had the ability to record liens against units based upon unpaid fees prior to the enactment of the Condominium Act and that the Appellate Division held in *Chase* that the New Jersey Condominium Act established the "limited priority over other liens", not that the Act created the actual authority to create and/or record liens against condominium properties that are delinquent in payment. *Id.* at 4.

*Debtor's Supplemental Response*

On May 8, 2017, Debtor filed a Letter Brief in Response. ECF No. 124. Debtor contends that Community Hills' letter brief is untimely and raises points that fall outside the subject matter of what this Court allowed at the Hearing. Second, Debtor contends that the Community Hills Letter addresses an argument that Debtor never made. Debtor asserts that it is not relying upon the effect of a recorded *lis pendens* or the Association's liens priority under the Act; rather, her argument goes to the effect of the foreclosure complaint filed by the Mortgagee prior to Community Hills recording its lien. Therefore, Debtor contends that this Court should not consider any of the arguments concerning the *Lis Pendens* statute.

## LEGAL STANDARDS

### I. The Anti–Modification Clause

Section 506(a) of the Bankruptcy Code generally allows a debtor to cram down the unsecured portions of a lien down to the amount of the value securing it. 11 U.S.C. § 506(a). However, Congress created an exception for liens secured solely by a Chapter 13 debtor's principal residence. 11 U.S.C. § 1322(b)(2). It provides in pertinent part that:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> . . . .
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[ ]

11 U.S.C. § 1322(b)(2).

This provision is commonly referred to as the "Anti–Modification Clause." The United States Supreme Court has held that the Anti–Modification Clause prohibits modification of an undersecured home lender's claim secured only by a lien on a Chapter 13 debtor's principal residence to the fair market value of the mortgage residence. *Nobelman v. American Savings Bank,* 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The Third Circuit subsequently found that a wholly unsecured mortgage is not a secured claim under the Bankruptcy Code and is therefore not subject to the Anti–Modification Cause in Section 1322(b)(2). *In re McDonald,* 205 F.3d 606, 610, 615 (3d Cir. 2000). In other words, if a lien on a Chapter 13 debtor's principal residence is com-

pletely undersecured, the lien can be modified and stripped off pursuant to Section 506(a).

## II. Lien Classification

The Anti–Modification Clause applies to a "security interest" and not to other types of liens recognized under the Bankruptcy Code. § 1322(b); *Holmes*, —— B.R. at ——, 2016 WL 4950993, at *4. Section 101 of the Code identifies and defines three types of liens: security interests, statutory liens, and judicial liens. A "security interest" is defined under the Bankruptcy Code as a "lien created by an agreement." 11 U.S.C. § 101(51). A "statutory lien" is defined as a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). A judicial lien is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). ·

Several courts in this Circuit, including the District Court, have found that these categories are mutually exclusive. *See Holmes*, —— B.R. at ——, 2016 WL 4950993, at *4; *In re Rones*, 531 B.R. at 530; *In re Young*, 477 B.R. 594, 598 (W.D. Pa. 2012); *In re Aikens*, 87 B.R. 350, 353 (Bankr. E.D. Pa. 1988); *In re Griggs*, 12 B.R. 443, 444 (Bankr. E.D. Pa. 1981). This principle is supported by the definition of "statutory lien", which expressly excludes security interests and judicial liens, as well as the legislative history of the Code. As stated in the House and Senate Reports, "the concept of lien is divided into three kinds of liens; judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive, and are exhaustive, except for certain common law

liens." H.R.REP. NO. 95–595, at 313 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6269; S.REP. NO. 95–989, at 25 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5811. Further, the Third Circuit has noted that the distinction between statutory and judicial liens is "amplified in the legislative history, which indicates that '[a] statutory lien is only one that arises automatically and is not based on an agreement to give a lien or on judicial action.'" *In re Schick*, 418 F.3d 321, 323 (3d Cir. 2005) (quoting H.R.REP. No. 95–595, at 314; S.REP. NO. 95–989 at 27; 1978 U.S.C.C.A.N. 6271, 5811).

## III. The New Jersey Condominium Act

The New Jersey Condominium Act, N.J.S.A. 46:8B–1 to –38, established a "comprehensive scheme for regulating condominiums and their associations." *Brandon Farms Prop. Owners Ass'n. v. Brandon Farms Condo. Ass'n*, 180 N.J. 361, 367, 852 A.2d 132 (2004). Under the Act, "[a] unit owner shall, by acceptance of title, be conclusively presumed to have agreed to pay his proportionate share of common expenses accruing while he is the owner of a unit." N.J.S.A. 46:8B–17. Indeed, "[o]ne of the core foundations of a common interest community is a sharing of expenses for maintenance among residents." *Mulligan v. Panther Valley Prop. Owners Ass'n.*, 337 N.J.Super. 293, 311, 766 A.2d 1186 (App. Div. 2001); *see also Park Place E. Condo. Ass'n v. Hovbilt, Inc.*, 279 N.J.Super. 319, 323, 652 A.2d 781 (Ch. Div. 1994) ("The legislative scheme for collection of assessments for maintenance charges against individual unit owners is a recognition that such charges are the financial life-blood of the Association.").

The Act provides, in pertinent part:

Liens in favor of association.

a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. Upon full payment of all sums secured by the lien, the party making payment shall be entitled to a recordable satisfaction of lien. Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:

(1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

(2) With respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit.

(3) In the case of more than one association lien being filed, either because an association files more than one lien or multiple associations have filed liens, the total amount of the liens granted priority shall not be greater than the assessment for the six-month period specified in paragraph (1) of this subsection. Priority among multiple filings shall be determined by their date of recording with the earlier recorded liens having first use of the priority given herein.

(4) The priority granted to a lien pursuant to this subsection shall expire on the first day of the 60th month following the date of recording of an association's lien.

(5) A lien of an association shall not be granted priority over a prior recorded mortgage or mortgages under this subsection if a prior recorded lien of the association for unpaid assessments has obtained priority over the same recorded mortgage or mortgages as provided in this subsection, for a period of 60 months from the date of recording of the lien granted priority.

(6) When recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien. An association which exercises a good faith effort but is

unable to ascertain the identity of a holder of a prior recorded mortgage on the property will be deemed to be in substantial compliance with this paragraph.

. . . .

N.J.S.A. 46:8B–21.

■ Under subsection (a), an association has a lien for unpaid assessments, provided that proper notice is given to the unit owner. N.J.S.A. 46:8B–21(a). Proper notice is "simultaneous notice, or notice within a reasonable time thereafter, of the recording of the lien." *Loigman v. Kings Landing Condominium Ass'n., Inc.*, 324 N.J.Super. 97, 103, 734 A.2d 367 (Ch. Div. 1999). Notice of the mere possibility that a lien may be filed is insufficient. *Id.* Under subsection (b), a lien under subsection (a) is granted priority to the extent of six-months worth of assessments measured by the amount of assessments due for the six-month period prior to the recording of the lien. N.J.S.A. 46:8B–21(b). Beyond the six months, the lien is junior, or "subordinate" to other liens including the mortgage on the property. *Id.* Importantly, in order for the association to achieve the benefit of the six-month priority, certain conditions must be met. *See* N.J.S.A. 46:8B–21(b)(1) to— (b)(6). For example, the association must record its lien prior to the mortgagee filing and serving a foreclosure action upon the association, N.J.S.A. 46:8B–21(b)(2), and the association must notify the first mortgage holder of the lien filing. N.J.S.A. 46:8B–21(b)(6). Further, the priority granted to an association pursuant to subsection (b) expires 60 months from when the lien is recorded. N.J.S.A. 46:8B–21(b)(4). Importantly, the Act allows for the recording of multiple liens, but in such case the association is still limited to only six-months worth of priority as set forth in subsection (a). N.J.S.A. 46:8B–21(b)(3).

## ANALYSIS

The District Court directed this Court on remand to make factual findings as to the existence, priority, and recordation of (a) any security interest; (b) any statutory lien; (c) the priority of such, and (d) whether any such lien is secured by equity in the property.

### 1. Security Interest v. Statutory Lien

A split of authority has emerged in this District with respect to the classification of condominium liens. *Compare In re Rones,* 531 B.R. at 534 (lien is a security interest); *In re Robinson,* No. 11-26981, 2012 WL 761251, at *5; *In re Robinson,* 231 B.R. 30, 34 (Bankr. D.N.J. 1997) (same); *with In re Smiley,* 569 B.R. 377, 393–94 (Bankr. D.N.J. 2017) (finding two liens, one statutory and one a security interest); *In re Keise,* 564 B.R. at 256 (same).

One of the first decisions in this district to touch upon the issue was by the Hon. Judith A. Wizmur in *In re Robinson,* 231 B.R. 30. As in the present case, *Robinson* involved a debtor who was attempting to reclassify a condominium association's claim from a secured claim, to a general unsecured claim and to "strip off" the lien because it was wholly unsecured. *Id.* at 31. The primary dispute in that case concerned whether a completely unsecured junior lien could be modified in light of the Supreme Court's *Nobelman* decision. *See id.* at 32–35. It also appears that parties in *Robinson* did not raise the priority issue under the Act. The court found that the association's lien position was completely unsecured. *Id.* at 31. Importantly, although the classification issue was not central to the dispute, Judge Wizmur determined that the proper characterization of the Association's lien was as a security interest rejecting the Association's assertion at different points in its briefs that the Association claim was a statutory lien. *Id.* at 31 n.

1. The court concluded that the Association's lien was "a security interest agreed to by the parties and provided for by statute." *Id.* (citing 11 U.S.C. § 101(53) (Bankruptcy Code definition of statutory lien). Thus, Judge Wizmur ultimately held that the security interest of the Association could not be reclassified to unsecured status regardless of the value of the debtor's property as such action was proscribed by § 1322(b)(2) and so could not be modified pursuant to § 506(a). *Id.* at 34.

Several years later, the Hon. Raymond T. Lyons considered the similar issues in a case also named *In re Robinson*, 2012 WL 761251. In that case, Judge Lyons first determined that the condominium owner's Association "ha[d] a lien which arises from the master deed and the statute." *Id.* at *3. The court then analyzed the Condominium Act and determined that N.J.S.A. 46:8B-21(b) "provides the Association with priority at least to part of their secured claim". *Id.* at *5. The court then held that because the association's claim was partially secured, the court could not modify the rights of even partially secured claims which are claims only secured by the Debtor's principal residence pursuant to Section 1322(b). *Id.* (citing *In re Nobleman*, 968 F.2d 483, 489 (5th Cir. 1992); *In re McDonald*, 205 F.3d 606). *Id.* However, *Robinson* did not specifically analyze whether the association lien was a security interest or statutory lien.

The Hon. Christine M. Gravelle's decision in *Rones*, 531 B.R. 526 squarely addressed the lien classification issue. In that case, Judge Gravelle first identified that the application of the Anti–Modification clause of § 1322(b)(2) depends upon whether the lien was a security interest or a statutory lien, as those terms are defined by the Bankruptcy Code. *See id.* at 529–30. Recognizing that the condominium lien appeared to "have a basis" in both the Master Deed and By–Laws and the Act, the

Court first looked to the language of the Code to determine how to classify the lien. *Id.* at 530. Specifically, the court noted that the definition of a statutory lien "is very narrow", that it "describes a statutory lien as arising *solely* from a statute", and that it "specifically excludes security interests and judicial liens even in those cases where the security interest, also referred to as a consensual lien, or the judicial lien is dependent upon the existence of the statute to be fully effective." *Id.* (citing 11 U.S.C. § 101(53)). Thus, the court found that because the condominium lien arises from two sources, the statute and the Master Deed and By–Laws, the lien cannot be said to arise "solely" from the statute. *Id.* The court emphasized that this reason

> [b]y itself, this would support this Court's finding that the Lien is a consensual lien because it arises from two sources, the statute and the Master Deed and Bylaws. Since the Lien can only be characterized as one type, the Code's definition of a statutory lien would instruct reliance on the Master Deed and Bylaws as a second source, which would result in the characterization of the Lien as a security interest.

*Id.* at 530.

The court also looked to the principle articulated in some of the case law that the classification of a lien depends on how and when the lien first arose, and found that a condominium lien first arose by agreement. *Id.* at 533 (citing *In re Young*, 477 B.R. at 602; *In re Stern*, 44 B.R. 15, 19 (Bankr. D.M.A. 1984)). In *In re Young*, the court found that the condominium lien in that case was a statutory lien because it originally arose solely by the force of statute, and that while "subsequent events may have given the lien the appearance of a security interest and/or a judicial lien", the nature of the lien did not change from a statutory lien, because classification de-

pends on how it first arose. *In re Young*, 477 B.R. at 602 (interpreting Pennsylvania law). Similarly, in *In re Stern* the court found that "[t]he lien comes into existence the moment the unit owner incurs an obligation to the condominium association of unit owners, that is, the moment the benefit is provided by the association." *In re Stern*, 44 B.R. at 19 (interpreting Massachusetts law). There the court found that Massachusetts law provided for the automatic creation of a lien on a condominium unit for a unit owner's share of common expenses. *Id.* Judge Gravelle disagreed with *Young* and *Stern*, and instead found that the lien first arose under the Master Deed:

> This Court finds that no benefit is conferred until the unit owner purchases the condominium unit, thereby becoming a member of the association and obligated by its master deed and bylaws. It is the act of purchasing the condominium unit, and voluntarily accepting and recording the unit deed, that gives rise to the lien.
>
> If a condominium association wants to take advantage of the Act, it must file its master deed. In order to gain the benefit of the super-priority lien provided by the Act, the condominium association must record a Notice of Lien in accordance with the Act. The Act bestows a priority to the condominium association for the "aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien ..." N.J. Stat. Ann. § 46:8B–21. The fact that the Act provides a statutory priority lien for a portion of the claim does not change the character of the lien as a security interest.

*In re Rones*, 531 B.R. at 533.

The court later emphasized that

> As discussed above, it is the Master Deed, made effective through the unit deeds, that creates the Lien. It is consensual, not statutory. It cannot be both. The Master Deed and the Act contain virtually the same language regarding liens. The only difference in the Act is the addition of a streamlined procedure to record the Lien, and priority payment treatment of a limited portion of the Lien. It would have been impossible to make those provisions effective in the Master Deed. Legislative action is required to establish recording procedures for the public land records and to change the priority of claims against title to property. The language of the Master Deed recognizes this fact and states that the Lien is subordinate to real estate taxes and prior recorded instruments. The only source of the priority is the Act. The fact that the statute, subsequent to the creation of the Lien, provides a mechanism for partial payment through the grant of a priority of payment, does not elevate the collateral position of the Lien.
>
> If the Court were to accept the position of Whispering Woods, that the statutory priority provided by the Act gives it the security necessary to be subject to the antimodification provision, it would also have to accept that the Act provides additional security for the Lien. That analysis would remove the Lien from the protection of the anti-modification clause. Section 1322(b)(2) prevents modification of "a claim secured only by a security interest in real property." *See* 11 U.S.C. § 1322(b)(2) (emphasis added). If what Whispering Woods argues is correct, the Lien would be secured not only by the security interest set forth in the Master Deed, but also through the Act. Without the Act, the Lien would clearly be wholly unsecured and could be stripped. Section 1322(b)(2) would not apply even were this Court to find equity that secured a portion of the claim, as

the security interest is not the only thing securing the Lien. Once recorded the Act provided additionally security for the Lien.

This Court finds that the consensual character of the Lien, as set forth in the Master Deed and Bylaws, did not change as a result of the existence of the Act. Nor did the character change when Whispering Woods recorded the Lien pursuant to the Act, making the limited priority of payment available to it.

*Id.* at 535.

Even though Judge Gravelle found that the lien was a security interest, the court then found that the lien was not subject to the Anti–Modification Clause of § 1322(b)(2). *Id.* at 535–36. Here the court ruled:

The United States Supreme Court explained that section 1322(b)(2) prohibited a Chapter 13 debtor from allowing as secured only that part of a mortgage equal to the value of the principal residence and treating the balance due under the mortgage as unsecured. *See Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 330–31, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The Nobleman court found that, if any portion of the mortgage was secured by the principal residence, it could not be crammed down as such treatment would be in violation of 11 U.S.C. 1322(b)(2). *See Nobelman,* 508 U.S. at 330–31, 113 S.Ct. 2106. In a later opinion, the Third Circuit Court of Appeals held that a wholly unsecured mortgage is not subject to the antimodification clause of 1322(b)(2). *See In re McDonald,* 205 F.3d 606 (3d Cir.2000). In this circuit, a junior mortgage may be crammed down, or "stripped," only if the value of the principal residence is less than the amount due to a senior mortgage holder, leaving no remaining value for the junior mortgage. *Id.* at 613–614.

Additionally, as noted above, the Master Deed acknowledges that the Lien is subordinate to real estate taxes and prior recorded instruments. The Debtors and Whispering Woods agreed to this and that agreement defines their relationship. This conforms to the reasoning in *Nobelman,* and highlights the distinguishable nature of a mortgage versus a condominium association lien in New Jersey. The Supreme Court in *Nobelman* noted that allowing a mortgagor to cram down her claim to the value of the property would modify her agreement with the mortgagee and modify the latter's rights. *See Nobelman,* 508 U.S. at 331, 113 S.Ct. 2106. *Nobelman* recognized a major problem in allowing reduction of a mortgage holder's claim to the value of a property in that it would require modification of contractual rights as to terms such as interest and amortization rates, affecting the amount of monthly payment and the term of the note. *See id.* at 331, 113 S.Ct. 2106. Here, the Act provides Whispering Woods with a statutory right to partial payment. This right is not modified by the Plan. It embodies a simple, easily applied formula for the allowance of payment of a limited portion of the Lien. Unlike *Nobelman,* there is no need for re-calculations or adjustments to the contractual relationship between the parties as a result.

As discussed above, the Act does not operate to secure the entire amount of the Lien. Because the amount due on the first mortgage exceeds the value of Debtors' principal residence, the Lien is wholly unsecured and may be stripped off in the Plan.

*Id.* at 536 (citation omitted).

On appeal the District Court in an opinion by the Hon. Freda L. Wolfson, U.S.D.J., reversed the Bankruptcy Court

with respect to its holding that the unsecured portion of the Association lien could be stripped off. *In re Rones*, 551 B.R. at 171. The District Court found that "the Condominium Act merely altered the priority of a portion of the Lien. Therefore the Condominium Act does not serve as a source of collateral which would remove the Lien from the protection of the Anti–Modification Clause." *Id.* In so ruling the Court stated:

> The Bankruptcy Court also concluded, alternatively and in *dicta*, that it could not accept the Association's argument that "the statutory priority provided by the Act gives it the security necessary to be subject to the antimodification provision," because then the Lien "would be secured not only by the security interest set forth in the Master Deed, but also through the Act," and, therefore, "would remove the Lien from the protection of the antimodification clause." *In re Rones*, 531 B.R. at 535. This is incorrect. [14] [15] The Anti–Modification Clause does not apply where a claim is secured by something other than a security interest in the debtor's principal residence. 11 U.S.C. § 1322(b)(2); *see In re Cummings*, 214 B.R. 126, 128 (D.N.J. 1997) (finding mortgage on debtor's principal residence not protected from bifurcation by Section 1322 because it was secured by "two types of additional collateral," the debtor's personal property and fixtures, and a life insurance policy). However, as the Bankruptcy Court itself observed when determining whether the Lien was consensual or statutory, the Condominium Act did not create the Lien—it was created by the Master Deed. *See In re Rones*, 531 B.R. at 533–34. Instead, as discussed above, the Condominium Act merely altered the priority of a portion of the Lien. Therefore, the Condominium Act does not serve as a source of collateral which would re-

move the Lien from the protection of the Anti–Modification Clause.

*Id.* at 171.

Thus, even though the District Court disagreed with Judge Gravelle's ultimate conclusion—that the lien could be modified—the parties did not appeal and the District Court did not disturb the Bankruptcy Court's determination that the Association's lien was a consensual lien, and therefore a security interest. *Id.* at 167.

The District Court in *Rones* went on to hold that § 1322(b)(2) prohibited the stripping off of the Association's lien because it was partially secured by the Debtor's principal residence stating:

> As discussed above, the Association's Lien had a limited priority pursuant to N.J.S.A. N.J.S.A. 46:8B–21, measured by the amount of the assessments due for the six-month period prior to the recording of the lien, $ 1,494, over the Mortgage on the Property. By operation of N.J.S.A. N.J.S.A. 46:8B–21, this limited portion of the Lien was elevated in priority over the Mortgage. Therefore, under the "one dollar" rule, because a portion of the Lien was secured by a security interest in the debtor's principal residence, no portion of the Association's lien could be stripped off under Section 1322. *See In re McDonald*, 205 F.3d at 613–14.

*Id.* at 171.

The Hon. Michael B. Kaplan reached a different conclusion in *Keise*, 564 B.R. 255. In that case, as in *Rones*, the homeowners association argued that its consensual lien for unpaid assessments was a security interest that could not be modified under the debtor's Chapter 13 plan, while the debtor argued that the lien was a statutory lien subject to modification. In an attempt to reconcile these two positions, the court determined that the association's claim was secured by "two separate liens": one a

consensual lien created by the Declaration of Covenants and Restrictions, and one a statutory lien created by the Condominium Act. *Id* at 264. In reaching this conclusion, the court first found that the Condominium Act created a lien by its plain language. *Id.* at 264 (citing N.J.S.A. 46:8B–21(a)). The court also found that the Act does not require that a master deed include such language giving rise to a lien. *Id.* at 264 (citing N.J.S.A. 46:8B–9) (outlining the required contents of a master deed). Next, the court stated:

> [w]hile the Court deems it evident that the Act, in and of itself, creates a lien securing outstanding assessments, the Court also finds that the Declaration creates a consensual lien. Specifically, the Declaration states in relevant part, "assessment[s], together with such interest thereon, late charges, and cost of collection thereof (including reasonable attorneys' fees) *shall be a continuing lien* upon the Lot against which each such assessment is made." (Decl. of Covenants and Restrictions 28, ECF No. 25.) Thus, by consenting to the Declaration, the Debtors also have granted a lien in favor of the Association in the event the Debtors fail to pay assessments.

*Id.*

Therefore, the court ultimately held that the homeowners association had a *"single claim* secured by *two-separate liens*—one statutory and one consensual—and, thus, the claim falls outside of § 1322(b)(2)'s refuge from modification." *Id.* at 256 (emphasis in original). The court explained that its conclusion "reinforces public policy concerns." *Id.* at 265. Specifically, that the legislative history of § 1322(b)(2) indicates that it was designed to promote the increased production of homes to encourage private individual ownership of homes as a traditional and important value in American life. *Id.* (citing *In re Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005)). The court drew a distinction between residential mortgages and claims for unpaid condominium association fees. *Id.*

The most recent decision to consider the issue was by the Hon. Stacey L. Meisel in *In re Smiley*, 569 B.R. 377.[7] In that case, the debtor sought to modify a secured claim filed by a condominium association by reclassifying a portion of the secured claim as unsecured. *Id.* at 379. The association maintained that its secured claim was protected by Section 1322(b)(2) and could not be bifurcated. *Id.* Recognizing that the Third Circuit has yet to address the lien classification issue, the court joined the *Keise* court in finding that section 46:8B–21(a) of the Act operates to create a lien. *Id.* at 393–94. The Court also found that the Master Deed created a consensual lien. *Id.* at 391. Accordingly, the court held that "section 1322(b) does not apply because the Association's secured claim is secured by both a consensual and statutory lien", and that section 1322(b) applies "when a claim [is] secured <u>only</u> by a security interest in real property that is the debtor's principal residence." *Id.* at 393–94. Thus as both a consensual and statutory lien exist the Association's claim may be modified. *Id.* at 394.

 This Court is ultimately persuaded by the *Rones* bankruptcy court's analysis that the lien is a security interest and not a statutory lien. This conclusion is first based upon the plain language of the Bankruptcy Code. "[W]hile state law creates legal interests and defines their incidents, 'the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute requires an interpretation of that statute, which is a Federal question.'" *In re*

7. *In re Smiley* was decided on July 12, 2017, after the Court reserved decision in this Case.

*Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991) (quoting *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354, 356 (3d Cir. 1986)). Under the Bankruptcy Code, a "security interest" is broadly defined as "a lien created by an agreement." § 101(51). By contrast, the definition of statutory lien is narrowly tailored to include only those liens which arise "solely by force of a statute." § 101(53). Thus, unless a lien arises "solely by force of a statute", it cannot be a statutory lien. *In re Schick*, 418 F.3d at 324; *Graffen v. City of Philadelphia*, 984 F.2d 91, 96 (3d Cir. 1992); *In re A & R Wholesale Distrib., Inc.*, 232 B.R. 616, 618 (Bankr. D.N.J. 1999). The clear implication of this rule is that if a lien arises from two separate sources, even if one source is a state statute, the Bankruptcy Code's definition of a statutory lien would dictate that that lien cannot be classified as a statutory lien under the Bankruptcy Code. *See In re Rones*, 531 B.R. at 530. As noted by the *Rones* bankruptcy court, "the mere existence of a statute does not automatically change the nature of consensual liens to statutory liens" as, for example, "New Jersey regulates many property interests in addition to condominium liens" including mortgage liens which are "universally considered consensual liens and therefore security interests." *Id.* at 533 (citing N.J.S.A. 17:12B–11) (mortgages deemed first lien); 17:11 C–51 to –89 (New Jersey Residential Mortgage Lending Act)). *Id.* at 533.

Here, Community Hills' lien does not arise "solely by force of a statute" because it was created by a consensual agreement between the parties. The Deed signed by the Debtor expressly adopts the provisions contained in the Master Deed, which states in in pertinent part that "[a]ll charges and expenses chargeable to any Unit constitute a lien against that Unit in favor of the Association." Master Deed, ¶ 7.02. Thus, by purchasing the Property and signing the Deed, the Debtor voluntarily agreed to the creation of a security interest in favor of Community Hills against her Property. To the extent that the Act also provides a source for the lien, because the lien is first created by agreement, the lien cannot be classified as a statutory lien under the Bankruptcy Code.

■ This Court respectfully elects not to follow the holdings of *Keise* and *Smiley* that two separate liens (one consensual and one statutory) exist simultaneously. First, this Court is not convinced that N.J.S.A. 46:8B–21(a) operates to create a lien that is independent of the Master Deed. As noted by the Third Circuit, "a statute is to be read as a whole, . . . since the meaning of statutory language, plain or not, depends on context." *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991)). Here, the statutory framework strongly suggests that the Act does not create an independent lien, but rather elevates a portion of a consensual lien to priority status. On this issue, this Court agrees with and incorporates the following analysis by the bankruptcy court in *Rones*:

> The Act defines "condominium" as "the form of ownership of real property under a master deed providing for ownership by one or more owners of units of improvements together with an undivided interest in common elements appurtenant to each unit." N.J. Stat. Ann. § 46:8B–3(h). By recording a master deed, the condominium submits to the provisions of the Act. N.J. Stat. Ann. § 46:8B–3(m). The Act acknowledges the right of condominium associations to draft its own rules and regulations in its master deed and bylaws, as long as they are not inconsistent with the Act. *See* N.J. Stat. Ann. § 46:8B–8, –9, –13, –13.1. It does not appear that the Act created

the condominium form of ownership. Instead, it regulates the form by imposing certain rights and responsibilities on an association, which is the governing body of the condominium. *See Gittleman [v. Woodhaven Condominium Ass'n, Inc.]*, 972 F.Supp. [894] at 900–01 [ (D.N.J. 1997) ). In *Gittleman,* the United States District Court for the District of New Jersey questioned whether the Act actually created the condominium form of ownership and acknowledged that it does not appear that a condominium did not or could not exist without the Act. *See id.* at 902.

*In re Rones,* 531 B.R. at 534.

Further, the District Court in *Rones* accepted this conclusion when it found that "the Condominium Act did not create the Lien, as it was created by the Master Deed. Instead ... the Condominium Act merely altered the priority of a portion of the Lien" and therefore "the Condominium Act does not serve as a source of collateral which would remove the Lien from the protection of the Anti–Modification Clause." *In re Rones,* 551 B.R. at 171. This Court agrees, and finds that the Master Deed created a single consensual lien that is a "security interest" under the Bankruptcy Code, with a 6–month priority status by operation of the Act, not two separate liens. The fact that the Act provides a statutory priority lien for a portion of Community Hills' claim does not change the character of the lien as a security interest. *In re Rones,* 531 B.R. at 533.

█ Second, even if subsection 46:8B–21(a) creates the lien, the question as to whether the lien is classified as statutory or consensual for purposes of the Bankruptcy Code depends upon when the lien first arose. *In re Rones,* 531 B.R. at 533; *In re Young,* 477 B.R. at 602; *In re Stern,* 44 B.R. at 19. Thus, the dispositive issue is not whether the Act creates a lien, but rather, whether the Act first created the

lien. As previously noted, here the lien first arose by agreement when Debtor purchased the Property and agreed to the terms in the Master Deed. The statutory framework of the Act also supports the conclusion that the lien first arose by agreement. Pursuant to N.J.S.A. 46:8B–8, a condominium association is created and established by the recording of a master deed. Further, the Act requires that the master deed contain specific provisions in order to bring the association under the jurisdiction of the Act. N.J.S.A. 46:8B–9. These provisions, read together, establish that the recording of a master deed is a necessary prerequisite for the Act to apply. It follows that absent a master deed, an association can have no priority lien under N.J.S.A. 46:8B–21(a). *See In re Rones,* 531 B.R. at 533. Further, as noted by Judge Gravelle, "New Jersey case law presumes agreement to pay condominium fees when a deed to a unit is accepted." *Id.* at 532 (citing *Thanasoulis v. Winston Towers 200 Ass'n, Inc.,* 110 N.J. 650, 542 A.2d 900, 903 (1988)).

█ The notion that a statutory lien and security interest can exist simultaneously conflicts with the plain language of the Bankruptcy Code and undermines the well-established principle that the categories of liens are mutually exclusive. This principle is not only derived from the legislative history, but rather is suggested by the definition of statutory lien itself. *In re Aikens,* 87 B.R. at 353 ("As the definition of 'statutory lien' expressly indicates, these classifications are mutually exclusive."). In this Court's view, Congress's clear intent was to create exclusive categories of liens.

### 2. *Priority Under the New Jersey Condominium Act*

The next issue before the Court is whether Community Hills satisfied the statutory requirements to achieve limited

priority for its lien under the Act. *See* N.J.S.A. 46:8B 21(b)(1) to –(6). In order to gain the benefit of the super-priority lien provided by the Act, the condominium association must record a Notice of Lien in accordance with the Act. *In re Rones,* 531 B.R. at 533. Debtor argues that N.J.S.A. 46:8B–21(b)(2) prevents Community Hills from receiving priority for its lien. That section states that priority is limited

> [w]ith respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a lis pendens giving notice of an action to foreclose a mortgage on that unit.

N.J.S.A. 46:8B–21(b)(2) (emphasis added).

The Debtor specifically relies upon subsection (b)(2)(a). Debtor interprets this provision to mean that once a mortgageholder files a foreclosure complaint, the effect of that complaint is to prohibit any condominium lien subsequently recorded from obtaining priority. Thus, Debtor reasons that because Community Hills recorded its liens after the First Foreclosure Complaint was filed, those liens are prohibited from attaining priority under the Act. In response, Community Hills argues that a dismissed foreclosure action does not affect its priority rights. Moreover, because the two foreclosure complaints were dismissed prior to the Community Hills recording two of its liens, subsection (b)(2)(a) does not prevent those liens from achieving priority under the Act.

This Court observes that it has not been presented with or uncovered any New Jersey Supreme Court decisions or other published cases interpreting this particular section of the Act. "When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent." *State v. Buckley,* 216 N.J. 249, 263, 78 A.3d 958 (2013) (quoting *State v. Shel-*

*ley,* 205 N.J. 320, 323, 15 A.3d 818 (2011)). " '[T]he intention of the Legislature is to be derived from a view of the entire statute' and all provisions 'must be read together in light of the general intent of the act.' " *Perez v. Zagami, LLC,* 218 N.J. 202, 211, 94 A.3d 869 (2014) (quoting *Hubner v. Spring Valley Equestrian Ctr.,* 203 N.J. 184, 195, 1 A.3d 618 (2010)). Further, "[i]t is axiomatic that a statute will not be construed to lead to absurd results." *State v. Provenzano,* 34 N.J. 318, 322, 169 A.2d 135 (1961). Similarly, the Third Circuit has instructed that "[t]he plain meaning of legislation should be conclusive, except in . . . rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Fontaine,* 697 F.3d 221, 227 (3d Cir. 2012) (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (internal quotation marks and citation omitted)). "In those rare cases, we are obligated 'to construe statutes sensibly and avoid constructions which yield absurd or unjust results.' " *Fontaine,* 697 F.3d at 227 (quoting *United States v. McKie,* 112 F.3d 626, 631 (3d Cir. 1997)).

The plain language of N.J.S.A. 46:8B–21(b)(2)(a) prevents a condominium lien from obtaining priority with respect to a particular mortgage unless the lien is recorded prior to receipt by the association of a "summons and complaint in an action to foreclose" on mortgage on that unit. Although the Debtor is correct that the section does not contain an express exception for dismissed foreclosures, this Court must "presume that the legislature intended exceptions to its language, which would avoid [absurd] results." *Fontaine,* 697 F.3d at 228 (quoting *United States v. Kirby,* 74 U.S. 482, 486–87, 7 Wall. 482, 19 L.Ed. 278 (1868)). Here, absent an exception for dismissed foreclosures actions, the mere filing

of a foreclosure complaint would create an interminable bar to the association's priority rights, even if the foreclosure is dismissed or later deemed void. As a result, the mortgage holder, who failed to prosecute its foreclosure action, would receive immunity from the Act. On the other hand, the condominium association, who timely filed its lien, would suffer a permanent bar to its priority rights. This result could not have been intended and would be unjust, and must be avoided.

The overall purpose of the Act is to protect condominium associations by providing a limited super-priority to the associations for its liens. The Act reflects a strong public policy decision by the New Jersey Legislature to see that associations, whose survival depends upon shared expenses, are paid. *See Park Place E. Condo. Ass'n.*, 279 N.J.Super. at 323, 652 A.2d 781 (describing the association's ability to collect delinquent maintenance charges as the "financial lifeblood" of the association). In light of that purpose, this court reads N.J.S.A. 46:8B–21(b)(2) as creating only a limited exception to the priority-skipping scheme envisioned by the New Jersey Legislature. Absent this provision, a condominium association could frustrate the foreclosure process by recording its super-priority lien while the foreclosure is pending. However, there is no legitimate reason to apply the exception to dismissed foreclosures actions where there is no possibility of interference or frustration with the foreclosure process. Accordingly, this Court finds that N.J.S.A. 46:8B–21(b)(2) contains at the very least an implicit exception for liens that are recorded <u>after</u> a foreclosure case is dismissed.

Here, the First Foreclosure Complaint was filed on August 18, 2008 and dismissed on January 26, 2012. The Second Foreclosure Complaint was filed on March 20, 2009 and dismissed on January 24, 2013. The four (4) liens that make up Community Hills' claim here were recorded on December 15, 2011 (Lien 1) ($5,237.38), March 5, 2012 (Lien 2) ($5,186.00), September 25, 2013 (Lien 3) ($7,375.28), and March 21, 2014 (Lien 4) ($9,560.05). Because Liens 1 and 2 were recorded during a pending foreclosure action, it could be argued that these liens cannot achieve priority pursuant to N.J.S.A. 46:8B–21(b)(2). However, this Court need not reach this issue, since as Liens 3 and 4 (the 2013 and 2014 liens) were clearly recorded after the Second Foreclosure case was dismissed, they are not barred from obtaining priority under N.J.S.A. 46:8B–21(b). Moreover, Liens 3 and 4 were timely recorded within 60 months of March 9, 2015, the date of the Debtor filing for bankruptcy, a prerequisite to obtaining priority under the Act pursuant to N.J.S.A. 46:8B–21(b)(4). In addition, this Court finds that Community Hills has provided sufficient documentary evidence of notice of the recording of the 2013 lien to both the Debtor and the Mortgagee to satisfy the notice requirements under N.J.S.A. 46:8B–21(a) (requiring notice to the unit holder) and (b)(6) (requiring notice to holder of a first mortgage lien). *See* Linderman Cert., *supra*, ¶¶ 7–25. Molina Cert., *supra*, ¶¶ 4,5.[8] Therefore, because Lien 3 (the 2013 lien) meets all of the statutory requirements, Community Hills' claim is entitled to limited priority under the Act.

### 3. *Section 1322(c)(2)*

Debtor's final argument is that Community Hills' claim can be modified pursuant to Section 1322(c)(2) of the Bankruptcy

---

**8.** At Oral Argument, Debtor's Counsel stated that he was offering no evidence to challenge the sufficiency of the notices provided to the Debtor and the Mortgagee. The record on remand however does not contain evidence of notice to the Debtor and Mortgagee of the recording of the 2014 lien.

Code. Although the Debtor did not make this argument prior to or during the appeal nor is this issue expressly part of the issues to be determined on remand, this Court finds that the issue is ripe for adjudication.[9]

Section 1322(c) provides:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law–

. . . .

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2).

This section carves out an exception to the Anti–Modification Clause in Section 1322(b), by permitting a debtor in certain limited circumstances to utilize the provisions of § 1325(a)(5) to cram down the claim of a secured creditor whose claim is secured only by the debtor's principal residence if the claim is scheduled to be paid off before completion of the chapter 13 plan. *See In re Paschen*, 296 F.3d 1203, 1209 (11th Cir. 2002). Because a chapter 13 plan may not extend beyond five years under 11 U.S.C. § 1322(d), section 1322(c) will typically apply to short-term mortgages, fully matured mortgages, long-term mortgages on which debtor has nearly completed payments, and mortgages will balloon payments. *See In re Rowe*, 239 B.R. 44, 51 (Bankr. D.N.J. 1999); *citing*

Collier on Bankruptcy ¶ 1322.16 (L. King 15th ed. 1987 Revised). As Bankruptcy Judge William F. Tuohey noted in *Rowe:*

Because the plan may not extend beyond five years, this section will encompass short term mortgages, long term mortgages on which the debtor has nearly completed payments, and mortgages with balloon payments. Congress obviously believed that debtors with such mortgages needed additional protection. Short-term mortgages and balloon payment mortgages often have high rates or terms that are particularly unfavorable, which Congress has deemed deserving of close scrutiny. And debtors nearing the end of a long-term mortgage often have large amounts of equity that could be lost in a foreclosure. *Collier on Bankruptcy* ¶ 1322.16 (L. King 15th ed. 1987 Revised).[4]

[FN4] Other courts have also interpreted this statute by its plain meaning to include only mortgages that mature prior to date on which the final payment under the plan is due. *See In re Mattson*, 210 B.R. [157] at 161 [ (Bankr.D.Minn.1997) ] (discussing whether or not a long term mortgage could be crammed down under § 1322(c)(2), the court noted that it will be rare that those type of mortgages will be undersecured when the last payment under the mortgage is due prior to the date on which the final payment under the plan is due); *In re Bagne*, 219 B.R. 272, 277 (Bankr.E.D.Cal.1998) ("The loans described in § 1322(c)(2), however, are of an entirely different nature. These short-term, high-interest

**9.** At Oral Argument, the Debtor asked this Court decide the issue, which has been fully briefed and argued. Further, Debtor has stated that should this Court not reach the argument here, Debtor would file another Plan that attempts to utilize Section 1322(c) to reclassify Community Hills' claim. Although

Community Hills objected to the Court deciding the issue, it acknowledge that the issue had been fully briefed and argued. It is therefore in the best interests of all parties and judicial economy for this Court to decide the issue at this time.

rate home equity loans are more akin to consumer financing than to traditional home lending." *Id.* at 277. The court interpreted the words original payment schedule to mean original mortgage).

*In re Rowe,* 239 B.R. at 51 (footnote included).

The Debtor argues here that the plain language of Section 1322(c)(2) applies to Community Hills' claim because since a condominium lien only arises due to a delinquency, a pre-petition condominium lien is by definition a lien in which the last payment on the original payment schedule is due before the final date under the plan. However, this Court does not expansively read Section 1322(c)(2) as applying to condominium association liens. First, there is no "payment schedule" for condominium liens, which arise only due to a unit holder's failure to pay monthly assessments. The decision in *In re Bartee,* 212 F.3d 277 (5th Cir. 2000) is instructive. In that case, the creditor homeowners association objected to the debtor's proposed Chapter 13 plan which sought to cram down the creditor's claim secured by a subordinate lien on the debtor's principal residence to zero and treat it as unsecured based on a lack of equity in the property after satisfaction of a senior mortgage. *Id.* at 280. The Fifth Circuit held that the Bankruptcy Code's antimodification provisions, § 1322(b)(2), do not protect secondary lienholders whose interest is not supported by at least some value in the debtor's principal residence. *Id.* at 280. The court also held that the narrow exception to the anti-modification provisions intended to cover short-term mortgages does not apply to secondary liens for annual assessments. *Id.* The Fifth Circuit observed "the one-time yearly assessment cannot properly be characterized as having an 'original payment schedule' similar to that of a mortgage." *Id.* at 295 (citation omitted). The assessment is calculated each year and comes due upon assessment. *Id.* The payment of the assessment does not pay down an existing debt. *Id.* Thus, the adoption of Debtor's interpretation here "would render the 'original payment schedule' language superfluous." *Id.* at 295–96.

Second, even if the assessments could create a "payment schedule," section 1322(c)(2) would still not apply because the final "payment" would not come due before the term of the Plan. *See In re Perry,* 235 B.R. 603, 608–09 (S.D. Tex. 1999), *abrogated on other grounds by In re Bartee,* 212 F.3d 277. Here, Paragraph 16.03 of the Master Deed provides that "[t]he covenants, agreements, and restrictions set forth herein run with the land and bind ... all Owners and the successors and assigns of each, as their interest appear." Master Deed, ¶ 16.03. Thus, assessments and common interest payments owed to Community Hills extend beyond the terms of the Debtor's Chapter 13 Plan. Accordingly, the Debtor cannot modify Community Hills' claim pursuant to § 1322(c)(2).

*4. Summary of Findings and Application of the Anti–Modification Clause*

As previously discussed, a Chapter 13 plan may not modify a claim that is secured only by a security interest in a debtor's principal residence. § 1322(b)(2); *In re Rones,* 551 B.R. at 167. Here, Community Hills has a "security interest" as defined by § 101(51). In addition, Community Hills' claim is partially secured because the New Jersey Condominium Act accords the lien a limited-priority measured by the amount of assessments due for the six-month period prior to the recording of the lien, $1,839.00, elevated in priority over the mortgage. N.J.S.A. 46:8B–21(b). Community Hills' September 25, 2013 lien clearly meets all of the requirements to achieve priority under the Act, N.J.S.A. 46:8B–21. Community Hills' claim is therefore se-

cured by some value, or "equity," in the Debtor's principal residence and because a portion of the claim is secured by a security interest in the debtor's principal residence, no portion of the claim can be reclassified and modified under the Plan. *In re McDonald*, 205 F.3d at 615 (a court cannot modify the rights of partially secured claims that are only secured by the Debtor's principal residence).[10] Accordingly, regardless of the value of the real property, the Debtor's proposed Plan cannot modify Community Hills' claim in violation of the Anti–Modification clause of § 1322(b)(2) and the present Modified Plan cannot be confirmed. The Court further finds that the Debtor cannot modify Community Hills' claim pursuant to § 1322(c)(2). By this ruling the Court is not fixing the final amount of Community Hill's claim which may be subject to adjustment at a future confirmation hearing.

## CONCLUSION

For the forgoing reasons, confirmation of Debtor's Modified Chapter 13 Plan as well as Debtor's Motion to Reclassify Lien of Community Hills is DENIED. The Court will grant the Debtor thirty (30) days from the date of the Opinion to file an amended Chapter 13 Plan in accordance with this Opinion.

An order shall be submitted consistent with this Opinion.

---

10. To the extent that the District Court on Remand has directed this Court to make findings as to any equity in the property, the record on appeal set forth the value of the Property as $85,000. No further value has been presented or established.